UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TOWAKI KOMATSU,

                    Plaintiff,

          -against-

URBAN PATHWAYS, INC.; DANIELS NORELLI CECERE &
TAVEL PC; NEIGHBORHOOD ASSOCIATION FOR INTER-
CULTURAL AFFAIRS, INC.; THE CITY OF NEW YORK;
RONALD ABAD; STEVEN BANKS; BARBARA BEIRNE;
KRISTEN BENJAMIN-SOLIS; MARTHA CALHOUN;
SHARON COATES; GARY COHEN; MARIN GERBER;
ALLISON GILL-LAMBERT; ANTHONY M. GONZALEZ;
ALLISON HEILBRAUN; JONI KLETTER; LISA LOMBARDI;
JULIO MANJARREZ; NIGEL MARKS;
JEFFREY MOSCZYC; ANDREW NASTACHOWSKI; MOLLY
PARK; KISHEA PAULEMONT; PINNY RINGEL; HAROLD
ROSENTHAL; ARIANA SAUNDERS; ANN MARIE SCALIA;
FREDERICK SHACK; NANCY SOUTHWELL; SAMUEL
SPITZBERG; ERIC TAVEL, all sued in their individual and
official capacities.


NANCY BANNON; ANTHONY CANNATARO; LYLE FRANK;
SHORAB IBRAHIM; GARY JENKINS; LAWRENCE MARKS;
MAURA NOLL; DANIEL TIETZ, all sued in their official
capacities,

                    Defendants.

22-CV-9080 (LTS)

ORDER TO AMEND

---

LAURA TAYLOR SWAIN, Chief United States District Judge:

          Plaintiff, appearing *pro se*, brings this 338-page complaint asserting violations of federal

and state law. Specifically, he seeks relief under 42 U.S.C. § 1983; the Fair Debt Collection

Practices Act ("FDCPA"), 15 U.S.C. § 1692; the civil provision of the Racketeer Influenced and

Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964; and New York State and City law.

          By order dated November 22, 2022, the Court granted Plaintiff's request to proceed

without prepayment of fees, that is, *in forma pauperis*. For the reasons set forth below, the Court

dismisses the claims brought against all of the defendants except the FDCPA claims, which are brought against Defendants Daniels Norelli Cecere & Tavel PC ("DNCT"), Harold Rosenthal, Allison Heilbraun, and Eric Tavel.

## STANDARD OF REVIEW

The Court must dismiss an *in forma pauperis* complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see* Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Moreover, in circumstances where "a court considers whether to withdraw a *pro se* litigant's special status, it should consider not only that litigant's lifetime participation in all forms of civil litigation, but also his experience with the particular procedural setting presented." *Sledge v. Kooi*, 564 F.3d 105, 109 (2d Cir. 2009). Thus, courts may "limit the withdrawal of special status to specific contexts in which the litigant's experience indicates that he may be fairly deemed knowledgeable and experienced." *Id.*

## BACKGROUND

### A.    Plaintiff's Procedural History in This Court

Plaintiff Towaki Komatsu has brought numerous actions in this court, including an action recently dismissed by the undersigned. *See Komatsu v. The City of New York*, ECF 1:22-CV-0424, 42 (S.D.N.Y. Jan. 3, 2023). That action, as well as other actions Plaintiff filed in this court, concern Plaintiff's alleged unlawful exclusion from participating in public meetings held by the City of New York. *See, e.g., Komatsu v. The City of New York*, ECF 1:20-CV-7046 (ER) (S.D.N.Y.), *lv denied*, 22-1996 (2d Cir. Dec. 22, 2022) (denying leave to appeal, based on leave-to-file sanction, "because the appeals do not depart from Petitioner's 'prior pattern of vexatious filings.'")); *Komatsu v. The City of New York*, ECF 1:18-CV-03698 (LGS) (GWG) (S.D.N.Y. Sept. 27, 2021) (ECF 627) (order involuntarily dismissing suit due to Plaintiff's vexatious conduct, including his repetitive voluminous and irrelevant filings), *aff'd*, 21-2479 (2d Cir. Mar. 1, 2022) ("[T]he appeal is DISMISSED because it 'lacks an arguable basis either in law or in fact.' *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)."). In the 20-CV-7046 action, Plaintiff was ordered to show cause why the action "should not be dismissed pursuant to the Court's inherent power to sanction vexatious litigants and/or failure to comply with court orders." *Id.* (ECF 208, at 4.) That matter has been briefed but to date is unresolved.

Since December 20, 2020, Plaintiff has been subject to a prefiling injunction requiring him to seek permission to file "any new action in this Court against the City of New York, city officials, and members of the NYPD regarding their alleged involvement in preventing him from attending public meetings with the Mayor." *Komatsu,* ECF 1:20-CV-07046 (ER) (ECF 45).

### B.    Plaintiff's Prior Litigation Involving Claims Raised in This New Action

In addition to the litigation Plaintiff has pursued against the City of New York concerning his alleged exclusion from public meetings, Plaintiff also has pursued litigation against

individuals employed by the City of New York, the State of New York, and private individuals regarding his lease agreement with Urban Pathways ("Urban"), subsequent state court litigation brought by Urban against Plaintiff, interactions with employees of New York City's Human Resources Administration ("HRA"), and interactions with employees of the New York State Office of Temporary and Disability Assistance ("OTDA"). Before filing this lawsuit, Plaintiff filed a similar action asserting claims against Urban and, as discussed below, naming many of the same defendants named here. *See Komatsu v. City of New York*, ECF 1:20-CV-6510, 2 (S.D.N.Y. Oct. 22, 2020) ("*Komatsu I*"). Accordingly, the Court will first describe the facts alleged in *Komatsu I*, and then turn to the facts alleged in this new action ("*Komatsu II*").

**C.**     ***Komatsu I***

    **1.**     **Defendants**

On August 14, 2020, Plaintiff filed *Komatsu I*, where he asserted many of the claims that are re-asserted in *Komatsu II* and named many of the same defendants. The first group of defendants includes Urban, described by Plaintiff as "a private entity, business partner of HRA" (ECF 2, at 13), and the following six Urban employees: Frederick Shack, Chief Executive Officer; Lisa Lombardi and Nancy Southwell, Deputy Executive Directors; Ronald Abad, Chief Operating Officer; Kishea Paulemont, Program Director; and Sharon Coates, an employee. Plaintiff also sued DNCT, the law firm representing Urban in its litigation brought against Plaintiff in the Bronx County Housing Court, as well as two of the firm's lawyers, Allison Heilbraun and Eric Tavel.

Plaintiff also sued individuals employed with the City's HRA, including Steven Banks, the former Commissioner; three HRA lawyers, Marin Gerber, Jeffrey Mosczyc, and Ann Marie Scalia; and Kristin Benjamin-Solis, an HRA employee.

The final defendant whom Plaintiff also names in *Komatsu II* is Nancy Bannon, a New York State Supreme Court Justice.[1]

### 2.    Allegations

The following facts are taken from the complaint filed in *Komatsu I*.[2]

In 2016, Plaintiff signed a lease with Urban to rent an apartment in the Bronx. Subsequent to Plaintiff's signing the lease, Urban initiated two Housing Court proceedings in the Bronx County Housing Court ("Housing Court"). DNTC represented Urban in these two proceedings.

In January 2017, HRA agreed to pay Plaintiff's storage expenses, incurred at CubeSmart, while Plaintiff resided in his Urban apartment. HRA later contested its agreement to pay for those expenses or to reimburse Plaintiff for the storage expenses he had already paid. Plaintiff litigated that issue in fair hearings before the OTDA, and then in the state courts in proceedings that he initiated under Article 78 of the New York Civil Practice Law and Rules ("Article 78"). On or about January 31, 2018, Defendant Judge Bannon dismissed Plaintiff's initial Article 78 proceeding. Plaintiff brought another proceeding that was pending before Defendant Judge Frank.

In addition to seeking damages, Plaintiff sought various forms of injunctive relief, including orders (1) directing the City of New York and Defendant Mosczyc to provide discovery in Plaintiff's state-court litigation, (2) staying his Housing Court proceedings, or in the

---

[1] Plaintiff named the following defendants in *Komatsu I* but not in *Komatsu II*: Marilyn Andzeski, Urban management agent; Molly McCracken, an employee with Services for the Underserved, Inc.; Avraham Schmeidler, an HRA employee; Wendell Vaughan, a law clerk; the New York State Office off Court Administration; the New York State Unified Court System; and Judge Brenda Spears, from the Bronx County Housing Court.

[2] The allegations from *Komatsu I*, described in this order, relate to the allegations set forth in *Komatsu II*, and do not include each allegation set forth in *Komatsu I*.

alterative, transferring the state court action to this court; (3) directing Judge Bannon to provide

an explanation regarding one of her decisions; and (4) directing the City of New York to cease all

of its business with Urban.

### 3. Litigation History

On October 22, 2020, the Honorable Louis L. Stanton dismissed the complaint as

frivolous, for failure to state a claim on which relief may be granted, for seeking monetary relief

from defendants who are immune from such relief, and under the Anti-Injunction Act. *See* 28

U.S.C. § 1915(e)(2)(B)(i)-(iii); 28 U.S.C. § 2283. Plaintiff appealed the decision, and the United

States Court of Appeals for the Second Circuit affirmed. *See Komatsu v. CubeSmart*, No. 20-

3676-cv (2d Cir. Dec. 20, 2021) (mandate issued Jan. 31, 2022).

### D. *Komatsu II*

### 1. Defendants

In this new action, Plaintiff brings the same claims, as well as new claims against the

following defendants, whom he named in *Komatsu I*: (1) Urban and Urban employees Shack,

Lombardi, Abad, Coates, Paulemont, and Southwell; (2) DNCT and DNCT lawyers Heilbraun

and Tavel; (3) former Commissioner Banks, HRA employee Benjamin-Solis, and HRA lawyers

Gerber, Mosczyc, and Scalia; and (4) Judge Bannon.

Plaintiff also brings new claims against additional defendants, who fall into the following

seven categories: (1) additional HRA defendants – Gary Jenkins, HRA's Commissioner; Martha

Calhoun, HRA's General Counsel; Allison Gil-Lambert, an HRA lawyer; Barbara Beirne, Deputy

Chief Agency Contacting Officer for HRA, who is a lawyer; and Molly Park, an HRA employee;

(2) additional Urban defendants - Ariana Saunders, Urban's Chief Compliance Officer, and

Andrew Nastachowski and Gary Cohen, Urban employees; (3) the Neighborhood Association for

Inter-Cultural Affairs, Inc. ("NAICA") and Julio Manjarrez, a NAICA lawyer, who represented

Plaintiff during his Urban litigation in Housing Court; (4) a licensed process server, Anthony

Gonzalez, who allegedly did not serve Plaintiff with legal papers; (5) individuals employed with

the OTDA - Daniel Tietz, OTDA Commissioner; Nigel Marks and Samuel Spitzberg, OTDA

lawyers; and Maura Noll, OTDA Administrative Law Judge; (6) an employee of the Community

Affairs Unit of the Mayor's Office, Pinny Ringel; and (7) another DNCT lawyer, Harold

Rosenthal.

Finally, Plaintiff names as defendants the following individuals, but only in their official

capacities: (1) Anthony Cannotora, Acting Chief Judge of the State of New York; (2) Judge Lyle

Frank, New York State Supreme Court; (3) Judge Shorab Ibrahim, Bronx County Housing Court;

(4) Gary Jenkins, Commissioner of the New York City Department of Social Services ("DSS");

(5) Lawrence Marks, Chief Administrative Judge of the UCS; and (6) Joni Kletter,

Administrative Law Judge and New York City attorney, and employee of former Mayor Bill de

Blasio.

### 2. Allegations

#### a. Urban and DNCT Defendants

Plaintiff's allegations against the Urban and DNCT Defendants concern his litigation in

Housing Court. He alleges that on August 16, 2019, Urban employee Coates "lied by

fraudulently claiming that I owed Urban more than $30,000 in rent for my Urban apartment."

(ECF 2, at 76.) "Urban used attorneys for DNCT to illegally commence [two lawsuits] as

nonpayment proceedings against me. Due to mootness, [these lawsuits] must be dismissed with

prejudice." (*Id.*)

Plaintiff alleges that more recently, on March 3, 2022, Plaintiff informed a representative

at the Housing Court that Urban failed to provide him with legal papers; he seeks dismissal of a

third action brought by Urban for failure to serve him such papers. He also seeks "a subpoena

that would order Urban to provide me the video recordings that were recorded on 3/8/22 both in the lobby and stairwells in my building" to show that Defendant Gonzalez, a process server, did not in fact serve Plaintiff legal papers. (*Id.*)

Plaintiff contends that DNCT lawyers "committed continuing violations against me as they committed wire fraud . . . and otherwise violated RICO . . . the FDCPA," and New York State statutes. (*Id.* at 77.) He also contends that "Urban, DNCT, and their personnel committed multiple acts of wire fraud against me through legal filings that were filed by attorneys for Urban[.]" (*Id.*)

Finally, Plaintiff claims that the HRA and Urban Defendants are so intertwined as to suggest that Urban is "an alter-ego, proxy, and agent of HRA while being a private entity whose acts are attributable to HRA." (*Id.* at 181.)

### b. HRA Defendants

Plaintiff's claims against the HRA Defendants concern HRA's alleged involvement in Plaintiff's litigation against Urban, that is: (1) Urban's alleged objection of justice; (2) interference with Plaintiff's ability to obtain counsel; (3) violation of his rights related to receiving discovery material; and (4) alleged fraud on the court by HRA lawyers. The majority of these claims arose on or before August 14, 2020, including nearly all of the claims against Banks and the claims against Benjamin-Solis. These claims include Plaintiff's CubeSmart litigation, which was the subject of Plaintiff's claims against HRA in *Komatsu I*.

With respect to the *pro bono* counsel allegation, Plaintiff asserts that, before former Commissioner Banks "resigned from HRA near the state of 2022 . . . he repeatedly told me that he and HRA would" assist Plaintiff in securing *pro bono* counsel. (*Id.*) These efforts, Plaintiff contends, were unsuccessful in part because the HRA Defendants "engag[ed] in illegal acts

against me pertaining to public meetings that have been public forums that include town hall meetings, resource fair meetings, and public hearings by illegally preventing [me] from lawfully attending them in the rooms in which members of the public conducted them with Mr. Banks and other personnel[.]" (*Id.*)

The allegations against the HRA lawyers concern their representation of the City during Plaintiff's litigation against the City. These government lawyers include Beirne, Gil-Lambert, Gerber, Mosczyc, and Scalia. The claims against Park concern Park's informing Plaintiff, on September 13, 2022, that Plaintiff would not receive discovery in his OTDA proceeding. (*See id.* at 118.)

### c. OTDA Defendants

Plaintiff's claims against the OTDA Defendants concern Plaintiff's litigation with the OTDA, over which Judge Bannon presided and in which HRA lawyers represented the City of New York. These incidents occurred in 2017. (*See id.* at 128.) The Defendants involved in the alleged incidents include: OTDA Commissioner Tietz, sued in his official capacity; OTDA lawyers Marks and Spitzberg; and Administrative Law Judge Noll.

### d. Defendants former Commissioner Banks, Pinny Ringel, and Lori Kletter

Plaintiff's claims against former Commissioner Banks also concern New York City public meetings involving public officials. For example, Plaintiff asserts that "I twice testified . . . during City Council public hearings on 9/20/18 and 2/4/19 . . . . Mr. Banks was present on 2/4/19 while I testified about Mr. Vargas and deliberately turned the screen of my laptop to face Mr. Banks as I played a relevant video in conjunction with and support of my testimony." (*Id.* at 187.)

Those claims brought against Ringel and Kletter also arise rise out of interactions with City officials at public meetings, including on such meeting on November 16, 2021, when Ringel and Kletter "illegally prevented me from having a conversation with Mr. Banks during that meeting right after I talked with Mr. de Blasio during it while he stood next to Mr. [Eric] Adams." (*Id.* at 89.)

### e.   NAICA Defendants

Plaintiff brings legal malpractice claims against NAICA and NAICA lawyer Manjarrez, who represented Plaintiff during one of the proceedings brought by Urban. (*Id.* at 79) ("Mr. Manjarrez confirmed that he was defying a directive that I had issued to him to obtain the video recordings that were recorded on 3/8/22 by video security cameras that are installed in public areas in my building" to prove that Defendant Gonzalez did not serve Plaintiff with legal papers.).

### f.   Process Server Gonzalez

Plaintiff brings claims against a process server who allegedly failed to serve legal papers relating to the Urban litigation. (*Id.* at 76) ("I wasn't served legal papers for Urban3 then by Defendant Anthony Gonzalez who claimed that he serve me legal papers[.]").

### 3.   Claims

Plaintiff asserts Section 1983 Claims against: (1) The City of New York; (2) Urban and Urban employees Ronald Abad, Lisa Lombardi, Andrew Nastachowski, Ariana Saunders, Frederick Shack, Nancy Southwell, and Kishea Paulemont; (3) HRA Commissioner Gary Cohen, former HRA Commissioner Steven Banks, HRA lawyers Marin Gerber, Ann Marie Scalia, Jeffrey Mosczyc, and Allison Gill-Lambert, HRA employee Kristen Benjamin-Solis, HRA General Counsel Martha Calhoun, (4) Judges Nancy Bannon, Lyle Frank, Shorab Ibrahim, Joni

Kletter, and Maura Noll; (5) OTDA lawyers Nigel Marks and Samuel Spitzberg; (6) HRA

employee Molly Park; and (7) Mayor's Office employee Pinny Ringel.

Plaintiff's FDCPA claims are brought against the Urban and DNCT Defendants, that is,

(1) Urban and Urban employees Ronald Abad, Sharon Coates, Lisa Lombardi, Kishea

Paulemont, Ariana Saunders, Frederick Shack, Nancy Southwell; and (2) DNCT and DNCT

lawyers Harold Rosenthal, Eric Tavel, and Allison Heilbraun.

Plaintiff's RICO claims are brought against City officials, NAIC Defendants, Urban

Defendants, and DNCT Defendants.

Plaintiff also asserts various state law claims.

### DISCUSSION

**A.      Claims Brought Against State Defendants in Their Official Capacity Are Dismissed
          Under the Eleventh Amendment**

Plaintiff brings claims against Judges Nancy Bannon, Anthony Cannatoro, Lyle Frank,

Shorab Ibrahim; Chief Administrative Judge Lawrence Marks; Administrative Law Judge Maura

Noll; and Commissioner Daniel Tietz, in their official capacities. In *Komatsu I*, Plaintiff also

brought several claims against New York State officials, in their official capacity. In dismissing

those claims under the Eleventh Amendment, Judge Stanton explained that the claims brought

against these State officials were not permitted under the Eleventh Amendment. *See Komatsu I*,

1:20-CV-6510, 10 ("Accordingly, the Court dismisses Plaintiff's claims under federal law against

. . . Justice Bannon, Judge Spears, and Defendant Vaughan, in their official capacities, under the

doctrine of Eleventh Amendment immunity. 28 U.S.C. § 1915(e)(2)(B)(iii)."). Here, Plaintiff

again brings official capacity claims against Judges Bannon, Cannataro, Frank, Ibrahim, Chief

Administrative Judge Marks, Administrative Law Judge Noll, and Commissioner Tietz,

notwithstanding his prior experience with this specific context. *Sledge*, 564 F.3d at 109. Because

these claims are barred under the Eleventh Amendment, the Court dismisses all federal claims

brought against these Defendants. 28 U.S.C. § 1915(e)(2)(B)(iii).

**B.     Plaintiff's Claims Against Government Attorneys Are Dismissed**

Plaintiff's federal claims brought against Defendants Calhoun, Beirne, Gil-Lambert,

Mosczyc, Gerber, Scalia, Marks, and Sptizberg arise from those defendants' legal advocacy

representing the HRA and OTDA. In *Komatsu I*, Plaintiff brought similar claims against

Mosczyc and Gerber, and Judge Stanton dismissed the claims because these two Defendants, as

government lawyers, were absolutely immune from the relief Plaintiff sought from them.

Undeterred by the dismissal of those claims in *Komatsu I*, Plaintiff continues to seek relief

against government attorneys who are his adversaries in his state court litigation. As explained in

*Komatsu I*, however, government attorneys are immune from suit under Section 1983 "when

functioning as an advocate of the state [or local government] in a way that is intimately

associated with the judicial process." *Mangiafico v. Blumenthal*, 471 F.3d 391, 396 (2d Cir.

2006); *see Barrett v. United States*, 798 F.2d 565, 572–73 (2d Cir.1986) (absolute immunity for

government attorney defending state in a civil lawsuit). Accordingly, the Court dismisses

Plaintiff's federal claims against the government attorneys because they are immune from such

relief. *See* 28 U.S.C. § 1915(e)(2)(B)(iii).

**C.     Claims Brought Against HRA Employee Park**

The Court also dismissed the claims brought against Park, an HRA employee who

allegedly informed Plaintiff that he was not entitled to discovery, because this Defendant is also

immune from the relief Plaintiff seeks. Like the HRA lawyers, who are absolutely immune as

government advocates, Parks is absolutely immune for damages where her conduct as an HRA

employee was "intimately associated with the judicial process." *Mangiafico*, 471 F.3d at 396.

12

Accordingly, the Court dismisses all claims against this Defendant. 28 U.S.C.

§ 1915(e)(2)(B)(iii).

**D.      Claims Brought Against Administrative Law Judge Noll**

Plaintiff's claims under federal law against Judge Noll are barred under the doctrine of

judicial immunity. Under this doctrine, judges are absolutely immune from suit for claims

against them in their individual capacities for damages for any actions taken within the scope of

their judicial responsibilities. *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991) (applying judicial

immunity to claims under § 1983); *Deem v. DiMella-Deem*, 941 F.3d 618, 620-21 (2d Cir. 2019)

(same as to claims under § 1983 and § 1985), *cert denied*, 140 S. Ct. 2763 (2020). Generally,

"acts arising out of, or related to, individual cases before [a] judge are considered judicial in

nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "[E]ven allegations of bad faith or

malice cannot overcome judicial immunity." *Id.* at 209. This is because, "[w]ithout insulation

from liability, judges would be subject to harassment and intimidation . . . ." *Young v. Selsky*, 41

F.3d 47, 51 (2d Cir. 1994).

Judicial immunity does not apply when a judge acts outside of his or her judicial capacity,

or when a judge takes action that, although judicial in nature, is taken "in the complete absence

of all jurisdiction." *Mireles*, 502 U.S. at 11-12; *see also Bliven*, 579 F.3d at 209-10 (describing

actions that are judicial in nature). But "the scope of [a] judge's jurisdiction must be construed

broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356

(1978).

Plaintiff's claims against Judge Noll arise from her actions and decisions in OTDA

proceedings, conduct that is well within the scope of judicial duties. Judge Noll is therefore

immune from suit as to Plaintiff's claims against her under the doctrine of judicial immunity. The

Court dismisses Plaintiff's claims against Judge Noll because Plaintiff seeks monetary relief

against a defendant who is immune from such relief, 28 U.S.C. § 1915(e)(2)(B)(iii), and,

consequently, as frivolous, 28 U.S.C. § 1915(e)(2)(B)(i). *See Mills v. Fischer*, 645 F.3d 176, 177

(2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous'

for purposes of [the *in forma pauperis* statute].").

### E.    Claims Brought Against Former HRA Commissioner Banks and HRA employee Benjamin-Solis

#### 1.    Claims that arose before August 10, 2020 against Banks and Benjamin-Solis

In *Komatsu I*, Plaintiff brought several claims against Banks and Benjamin-Solis that

were considered on the merits by Judge Stanton and dismissed for failure to state a claim. *See*

§ 1915(e)(2)(B)(ii). In *Komatsu II*, Plaintiff brings the same claims against these Defendants, as

well as new claims arising from the same conduct, that is, Plaintiff's litigation with HRA. These

claims are barred under the doctrine of claim preclusion.[3]

Under the doctrine of claim preclusion, also known as "*res judicata*," a litigant may not

bring a new case that includes claims or defenses that were or could have been raised in an

earlier case in which the same parties were involved if that case resulted in a judgment on the

merits. *Brown v. Felsen*, 442 U.S. 127, 131 (1979). Claim preclusion "prevents parties from

raising issues that could have been raised and decided in a prior action – even if they were not

actually litigated." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589,

1594, 206 L. Ed. 2d 893 (2020).

---

[3] Although claim preclusion is an affirmative defense to be pleaded in a defendant's answer, *see* Fed. R. Civ. P. 8(c), the Court may, on its own initiative, raise the issue. *See, e.g.*, *Grieve v. Tamerin*, 269 F.3d 149, 154 (2d Cir. 2001) (affirming district court's dismissal on grounds of issue preclusion even though defendant failed to plead that defense, and noting that "principles of preclusion involve" not only "the rights and interests of the parties," but also "important interests of the public and the courts in avoiding repetitive litigation and potentially inconsistent decisions").

Claim preclusion generally applies if: "(1) the prior decision was a final judgment on the merits, (2) the litigants were the same parties, (3) the prior court was of competent jurisdiction, and (4) the causes of action were the same." *In re Motors Liquidation Co.*, 943 F.3d 125, 130 (2d Cir. 2019) (citation and internal quotation marks omitted).

To determine if a claim could have been raised in an earlier action, courts look to whether the present claim arises out of the same transaction or series of transactions asserted in the earlier action, *see Pike v. Freeman,* 266 F.3d 78, 91 (2d Cir. 2001), or, in other words, whether facts essential to the second suit were present in the first suit, *NLRB v. United Techs. Corp.*, 706 F.2d 1254, 1260 (2d Cir. 1983). "A party cannot avoid the preclusive effect of *res judicata* by asserting a new theory or a different remedy." *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017) (internal quotation marks and citation omitted).

All of Plaintiff's claims brought against Benjamin-Solis, and some of the claims brought against Banks, accrued before Plaintiff filed *Komatsu I*. Further, all of the claims brought against Benjamin-Solis and some of the claims brought against Banks in *Komatsu II* arise from the same series of transactions as the claims asserted against them in *Komatsu I*. Because Plaintiff did bring those claims, or could have brought those claims in *Komatsu I*, those claims are barred under the doctrine of claim preclusion.

### 2.   Claims against Banks that accrued after August 14, 2020

Plaintiff brings new claims against Banks regarding his interactions with Banks at public meetings. Plaintiff is barred from bringing new claims against City officials regarding incidents occurring at public meetings, unless he receives permission to do so. Because Plaintiff did not seek permission to file new claims against these individuals, as discussed below in Section J, those claims are dismissed without prejudice.

With respect to Bank's alleged interference with Plaintiff's retaining *pro bono* counsel, Plaintiff does not suggest a violation of a constitutional right. The Sixth Amendment, which provides a right to counsel in criminal cases, "does not govern civil cases." *Turner v. Rogers*, 564 U.S. 431, 441 (2011). Thus, to the extent Banks interfered with Plaintiff's retaining counsel, such interference does not implicate Plaintiff's rights under the United States Constitution. Accordingly, the claims against Banks concerning *pro bono* counsel are dismissed for failure to state a claim.

**F.      The City of New York and HRA Commissioner Jenkins**

The Court dismisses Plaintiff's claims under federal law against the City of New York and Commissioner Jenkins, who is sued in his official capacity. When a plaintiff sues a municipality under Section 1983, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation.") (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 692 (1978)); *Cash v. Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011).

To state a Section 1983 claim against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (internal citations omitted).

Plaintiff alleges no facts showing that the City of New York violated any of his federal constitutional or statutory rights because of one of the City's policies, customs, or practices. The Court therefore dismisses Plaintiff's claims under federal law against the City of New York and Commissioner Jenkins, sued in his official capacity, for failure to state a claim on which relief may be granted.

### G.     Section 1983 Claims Brought Against Private Defendants

Plaintiff brings Section 1983 claims against private individuals and entities, also named in *Komatsu I*, that is: Urban, Abad, Coates, Lombardi, Paulemont, Shack, and Southwell. Judge Stanton dismissed these claims for failure to state a claim because Plaintiff failed to show that any conduct by these private individuals could be considered state action. Now, Plaintiff re-asserts similar claims against these same private individuals and also names additional private individuals, not named in *Komatsu I*, that is: Saunders, Nastachowski, and Cohen. Plaintiff still does not show, however, that these defendants' conduct can be considered state action. Thus, for the reasons set forth in Judge Stanton's order, dismissing the Section 1983 claims against the private individuals, the Court dismisses Plaintiff's claims against the individual defendants named in this action for failure to state a claim.

### H.     Claims Under Civil RICO

Plaintiff asserts that Defendants have conspired against him, in violation of the civil provision of RICO. Plaintiff brought similar claims in *Komatsu I*, and Judge Stanton dismissed those claims because Plaintiff failed to show that Defendants engaged in any activity that would support any claim under civil RICO. In this action, Plaintiff also fails to state any facts suggesting a RICO violation. The Court therefore dismisses Plaintiff's claims under civil RICO for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii).

I.        **Claims Under the Fair Debt Collection Practices Act ("FDCPA")**

Plaintiff brings claims against the Urban and DNCT Defendants, asserting that they

violated the FDCPA. He alleges that they falsely claimed in court that Plaintiff owed rent. He

relies on a district court decision, in which a consumer sued a law firm that was a debt collector.

*Lee v. Kucker & Bruh*, LLP, 958 F. Supp. 2d 524, 526 (S.D.N.Y. 2013) ("Defendant K & B is a

law firm that primarily represents landlords in New York City. K & B is a debt collector as

defined by the FDCPA.").

The FDCPA applies to consumer debt "arising out of . . . transaction[s] . . . primarily for

personal, family, or household purposes." 15 U.S.C. § 1692a(5); *Polanco v. NCO Portfolio*

*Mgmt., Inc.*, 930 F. Supp. 2d 547, 551 (S.D.N.Y. 2013) ("[T]he FDCPA is triggered when the

obligation is a debt arising out of a consumer transaction"). In cases where the FDCPA applies, it

prohibits deceptive and misleading practices by "debt collectors." 15 U.S.C. § 1692e. A debt

collector is defined in Section 1692a(6) as: (1) a person whose principal purpose is to collect

debts; (2) a person who regularly collects debts owed to another; or (3) a person who collects its

own debts, using a name other than its own as if it were a debt collector. *See also Henson v.*

*Santander Consumer USA, Inc.*, 137 S. Ct. 1718 (2017) (holding that entities that regularly

purchase debts originated by someone else and then seek to collect those debts for their own

account are not necessarily debt collectors subject to the FDCPA).

Section 1692d provides that "[a] debt collector may not engage in any conduct the natural

consequence of which is to harass, oppress, or abuse any person in connection with the collection

of a debt." Conduct in violation of the statute includes, among other examples and without

limitation, using violence or the threat of violence or other criminal means; using obscene or

profane language "the natural consequence of which is to abuse the hearer or reader"; publishing

a list of consumers who refuse to pay debts; or "[c]ausing a telephone to ring or engaging any

person in telephone conversation repeatedly or continuously with the intent to annoy, abuse, or harass" the person called. 15 U.S.C. § 1692d.

Plaintiff's claims against the Urban Defendants fails to state claims upon which relief may be granted because Plaintiff does not state facts suggesting that they are debt collectors. His claims against the DNCT Defendants, however, may state claims, if he can show that these defendants engaged in harassing conduct with respect to the alleged debt owed to Urban.

As discussed below, the Court grants Plaintiff leave to file an amended complaint as to his FDCPA claims against DNCT and the DNCT lawyers Harold Rosenthal, Eric Tavel, and Allison Heilbraun. His FDCPA claims brought against Urban and Urban employees Ronald Abad, Sharon Coates, Lisa Lombardi, Kishea Paulemont, Ariana Saunders, Frederick Shack, and Nancy Southwell are dismissed for failure to state a claim upon which relief may be granted.

**J.**     **Claims Against former Commissioner Banks, Pinny Ringel, and Lori Kletter**

Plaintiff's claims against former Commissioner Banks, Ringel and Kletter, that arise out of alleged conduct by New York City officials at public meetings, fall within the scope of Judge Ramos's order requiring Plaintiff to seek permission to file "any new action in this Court against the City of New York, city officials, and members of the NYPD regarding their alleged involvement in preventing him from attending public meetings with the Mayor." *Komatsu*, ECF 1:20-CV-07046 (ER) (ECF 45). These claims are therefore dismissed without prejudice because Plaintiff has not obtained permission to bring these claims against these defendants.

**K.**     **Claims Under State Law**

A district court may decline to exercise supplemental jurisdiction over claims under state law when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of

jurisdiction . . . ." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted).

At this stage, it is premature to determine whether the Court will decline to exercise its

supplemental jurisdiction over any claims under state law that Plaintiff is asserting. *See Kolari v.*

*New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367

'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances

in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of*

*Surgeons*, 522 U.S. 156, 173 (1997))).

## LEAVE TO AMEND

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to

cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*,

657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). The

Court, having dismissed all of the claims brought against the DNCT Defendants except the

FDCPA claims, finds that it would be futile to grant him leave to amend the non-FDCPA claims.

Accordingly, the Court grants Plaintiff leave to file an amended complaint to assert his FDCPA

claims against the DNCT Defendants. The amended complaint must only name the DNCT

Defendants and only assert the FDCPA claims, and it may not exceed 20 pages. These limitations

are imposed based on Plaintiff's litigation history in this court, where he reasserts the same

claims against the same defendants following dismissal of such claims on the merits. The page-

limitation is imposed because Plaintiff's pleadings, both in this action and prior actions, do not

comply with Rule 8's requirement that his complaint consist of short and plain statements. *See*

Fed. R. Civ. P. 8(a).

Should Plaintiff submit an amended complaint that fails to comply with these

requirements, the Court will direct the Clerk of Court to return Plaintiff's pleading and will

provide him one more opportunity to submit an amended complaint that does not exceed 20

pages, names DNCT Defendants, and asserts FDCPA claims. If he fails to comply with the requirements a second time, the Court will dismiss the action for failure to comply with the Court's order.

**CONCLUSION**

The Court dismisses Plaintiff's federal claims brought against Urban Pathways, Inc., Neighborhood Association For Inter-Cultural Affairs, Inc., The City Of New York, Ronald Abad, Steven Banks, Barbara Beirne, Kristen Benjamin-Solis, Martha Calhoun, Sharon Coates, Gary Cohen, Marin Gerber, Allison Gill-Lambert, Anthony M. Gonzalez, Joni Kletter, Lisa Lombardi, Julio Manjarrez, Nigel Marks, Jeffrey Mosczyc, Andrew Nastachowski, Molly Park, Kishea Paulemont, Ariana Saundersm, Ann Marie Scalia, Frederick Shack, Nancy Southwell, Samuel Spitzberg, Nancy Bannon, Anthony Cannataro, Lyle Frank, Shorab Ibrahim, Gary Jenkins, Lawrence Marks, Maura Noll, and Daniel Tietz, as frivolous, for failure to state a claim on which relief may be granted, and for seeking monetary relief from defendants that are immune from such relief. *See* 28 U.S.C. § 1915(e)(B)(i)-(iii).

Those claims brought against Steve Banks, Penny Ringel, and Lorri Kletter that arise out of public meetings are dismissed without prejudice, pursuant to the prefiling injunction issued in *Komatsu*, ECF 1:20-CV-07046 (ER) (ECF 45).

The Court grants Plaintiff leave to file an amended complaint that complies with the standards set forth above.

Plaintiff must submit the amended complaint, which may not exceed 20 pages, to this Court's Pro Se Intake Unit within sixty days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 22-CV-9080 (LTS).

An Amended Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to

excuse such failure, the complaint will be dismissed for failure to state a claim upon which relief may be granted.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated:   January 26, 2023
New York, New York

      /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.

-against-

_____

_____

_____

_____

Write the full name of each defendant. If you need more space, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section II.

_____CV_____
(Include case number if one has been assigned)

**AMENDED**

**COMPLAINT**

Do you want a jury trial?
☐ Yes     ☐ No

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

## I.   BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☐   **Federal Question**

☐   **Diversity of Citizenship**

## A.   If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?

_____

_____

_____

_____

## B.   If you checked Diversity of Citizenship

### 1.   Citizenship of the parties

Of what State is each party a citizen?

The plaintiff , _____ , is a citizen of the State of

(Plaintiff's name)

_____

(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____ .

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

If the defendant is an individual:

The defendant, _____, is a citizen of the State of
                 (Defendant's name)

_____

or, if not lawfully admitted for permanent residence in the United States, a citizen or
subject of the foreign state of

_____.

If the defendant is a corporation:

The defendant, _____, is incorporated under the laws of

the State of _____

and has its principal place of business in the State of _____

or is incorporated under the laws of (foreign state) _____

and has its principal place of business in _____.

If more than one defendant is named in the complaint, attach additional pages providing
information for each additional defendant.

## II.  PARTIES

### A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional
pages if needed.

_____

First Name               Middle Initial        Last Name

_____

Street Address

_____

County, City                      State            Zip Code

_____        _____

Telephone Number               Email Address (if available)

## B.  Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1:

First Name                          Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City                          State                    Zip Code

Defendant 2:

First Name                          Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City                          State                    Zip Code

Defendant 3:

First Name                          Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City                          State                    Zip Code

Defendant 4:

_____

First Name                          Last Name

_____

Current Job Title (or other identifying information)

_____

Current Work Address (or other address where defendant may be served)

_____

County, City                          State                          Zip Code

## III. STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

## FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

**IV. RELIEF**

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

## V.  PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| Dated | | Plaintiff's Signature |
| First Name | Middle Initial | Last Name |
| Street Address | | |
| County, City | State | Zip Code |
| Telephone Number | | Email Address (if available) |

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☐ Yes   ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.